OPINION
{¶ 1} Appellants, William S. Yates and LaVerne Yates, appeal the December 4, 2001 judgment entry from the Willoughby Municipal Court.
 {¶ 2} On October 25, 2000, appellants filed a complaint against appellee, John Slotnicker, and Mason Masters, Inc. alleging breach of contract and violations of R.C. 1345.02 and/or R.C. 1345.03.[1] On November 2, 2000, appellee and Mason Masters, Inc. filed their answer to the complaint. Appellants filed two separate motions for continuance.[2]
A trial commenced on August 15, 2001, before a magistrate, and concluded on October 11, 2001.[3]
 {¶ 3} The record reveals that on May 15, 2000, appellants entered into a contract with Mason Masters, Inc. to perform certain repairs and concrete work on their garage for $6,110. After the commencement of the repair work, on June 5, 2000, appellants decided that Mason Masters, Inc. would replace the brick veneer on the garage for an additional $5,000. The work was completed by appellee around June 28, 2000, and Mason Masters, Inc. was paid in full.[4]
 {¶ 4} Thereafter, appellants made two complaints to the city of Wickliffe Building Inspector as to the defects in the work performed at their home. The complaints consisted of: (1) defects in the failure to affix certain nuts to bolts that had been installed; (2) the failure to provide a downspout; (3) no expansion joints were placed in the cement slab separating the driveway from the garage floor; (4) no saw cuts were made in the new concrete garage floor; (5) random patterns in joints between the layers of brick and irregular widths in the cement joints; (6) inconsistent mortar color; (7) a gap under the garage soffit; and (8) the failure to place a weatherhead around the electrical access to the home. At the trial, appellants' expert witness testified that the cost to repair all of the defects that appellants were complaining of would be approximately $8,500. Appellant William S. Yates declared that he believed the value of his house had been diminished by $25,000 because of the unworkmanlike job. However, the city of Wickliffe Building Inspector related that the job met the city building and zoning requirements even though those building codes did not take into consideration whether the job had been performed in a workmanlike manner.
 {¶ 5} Appellee took the stand and explained that he participated with the crew from Mason Masters, Inc. in completing the job at appellants' home. He further added that appellant William S. Yates was present and, at times, aided in the work. He also stated that appellants did not object to the work performed until the complaints were made to the city of Wickliffe Building Inspector. Appellee indicated that upon learning of appellants' complaints from the city of Wickliffe Building Inspector, he immediately corrected the defects. The city of Wickliffe Building Inspector corroborated that appellee and Mason Masters, Inc. remedied the defects after they were brought to their attention.
 {¶ 6} The magistrate rendered his decision on October 30, 2001. The magistrate concluded that there was insufficient evidence to establish that appellee violated any element of the Ohio Consumer Sales Practice Act ("CSPA"). The magistrate also added that appellants failed to show that appellee was personally liable for any claim as the "only party responsible was the entity known as Mason Masters, Inc., an Ohio Corporation." The magistrate granted judgment in favor of appellants against Mason Masters, Inc. in the sum of $500, and judgment in favor of appellee on the complaint. The trial court adopted the decision of the magistrate on October 30, 2001, and stated that the parties had fourteen days from the date of that entry to file objections. Appellants filed objections to the decision on November 13, 2001. In an entry dated December 4, 2001, the trial court overruled appellants' objections. It is from that entry that appellants timely filed the instant appeal and now assign the following as error:
 {¶ 7} "[1.] The [t]rial [c]ourt's [j]udgment that [appellants] failed to prove a violation of the [CSPA], [R.C.] 1345.01, et seq. is against the manifest weight of the evidence.
 {¶ 8} "[2.] As a result of the [t]rial [c]ourt's error in failing to find a violation of the [CSPA], the [t]rial [c]ourt erred by failing to award the appropriate statutory damages.
 {¶ 9} "[3.] The [t]rial [c]ourt erred in failing to find [appellee] personally liable for committing unfair and deceptive sales practices, in violation of the [CSPA]."
 {¶ 10} Preliminarily, we note that if the complaining party does not submit a transcript or affidavit with their objections to the magistrate's decision to the trial court pursuant to Civ.R. 53(E)(3)(b), then that party is precluded from arguing the factual determination on appeal and waives any claim that the trial court erred in adopting the magistrate's factual finding. Pawlowski v. Pawlowski (Aug. 22, 1997), 11th Dist. No. 96-L-144, 1997 WL 585963, at 1-2. Civ.R. 53(E)(3)(b) states that an affidavit of evidence may be used if a transcript is unavailable. Here, appellant failed to file a transcript or an affidavit with the trial court until February 2002, but the trial court had already entered its judgment on December 4, 2001, and the fourteen-day period set forth in Civ.R. 53(E)(3)(a) to file objections together with either a transcript or affidavit in support of appellants' objections had long since passed. Thus, appellants' claims are waived. Nonetheless, in the interests of justice, we will address the merits of the appellants' assignments of error.
 {¶ 11} Under their first assignment of error, appellants assert that the trial court's judgment was against the manifest weight of the evidence. In assessing a claim that a judgment in a civil matter is against the manifest weight of the evidence, the Supreme Court of Ohio has held:
 {¶ 12} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Furthermore, evaluating evidence and assessing the credibility of that evidence are the primary function of the trier of fact, and not an appellate court. Yuhasz v. Mrdenovich (1992), 82 Ohio App.3d 490, 492. "`[T]he trial [court] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Sanders v. Webb (1993), 85 Ohio App.3d 674, 682, quoting Seasons Coal, 10 Ohio St.3d at 80.
 {¶ 13} The CSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions. R.C. Chapter 1345 contains the CSPA. The act is intended to be remedial and should be construed liberally in favor of consumers. Einhorn v. FordMotor Co. (1990), 48 Ohio St.3d 27, 29.
 {¶ 14} Whereas R.C. 1345.02 prohibits unfair or deceptive acts or practices, R.C. 1345.03 prohibits unconscionable acts or practices in connection with consumer transactions whether such acts or practices occur before, during, or after a transaction. This section lists a number of circumstances to be taken into consideration in determining whether an act or practice is unconscionable. In order to recover for unconscionable acts or practices, the consumer must prove that the supplier acted unconscionably and knowingly. Karst v. Goldberg (1993), 88 Ohio App.3d 413,418.
 {¶ 15} In order to establish a CSPA violation, the court must determine that the transaction between the parties was one to which the CSPA applied. A "consumer transaction" is defined as any "sale, lease, assignment, award by chance, or other transfer of an item of goods * * * to an individual for purposes that are primarily personal, family, or household[.]" R.C. 1345.01(A). However, this statute must be read in conjunction with R.C. 1345.02 and R.C. 1345.03, which provide that a supplier is prohibited from doing certain things "in connection with a consumer transaction." The consumer need not prove that the supplier intended to commit an unfair or deceptive act to establish a violation of the CSPA, but only that such an act was committed. Garner v. BorcherdingBuick, Inc. (1992), 84 Ohio App.3d 61, 64.
 {¶ 16} To determine if a specific act or practice is a deceptive sales practice which violates the general directive of R.C. 1345.02(A), one must look to three separate sources. First, R.C. 1345.02(B) contains an enumerated list of practices that are unfair or deceptive. Second, pursuant to R.C. 1345.05(B)(2), the attorney general is authorized to adopt substantive rules defining acts or practices that violate R.C.1345.02. These rules are found in the Ohio Administrative Code. Third, Ohio courts have defined a variety of specific acts and practices which are unfair or deceptive. Frey v. Vin Devers, Inc. (1992), 80 Ohio App.3d 1,6. See, also, Fletcher v. Don Foss of Cleveland, Inc. (1993),90 Ohio App.3d 82, 86.
 {¶ 17} In the present case, the transaction falls within the definition of a "consumer transaction" for services as defined in the Act. However, appellant has not established that appellee or Mason Masters, Inc. committed an "unfair or deceptive act" in violation of the letter and intent of the CSPA. The CSPA does not provide an all-inclusive list of what constitutes an unconscionable act or practice, but R.C.1345.03 does set forth the factors to be considered in making such a determination.
 {¶ 18} Further, the record contained evidence that around May 15, 2000, appellants entered into an agreement with Mason Masters, Inc. to perform certain repairs to their garage. Also found in the record is evidence that appellee and Mason Masters, Inc. performed these repairs. Appellants claim that there were several defects in the work performed by Mason Masters, Inc. and appellee. They even presented a witness who testified that the alleged defects would cost approximately $8,500 remedy. However, upon inspection by the city of Wickliffe Building Inspector, the work met the city building and zoning requirements even though the codes do not take into consideration whether a job was performed in a workmanlike manner.
 {¶ 19} While the work performed by Mason Masters, Inc. through appellee may not have been up to appellants' standards, there was nothing deceptive or misleading about it. Even if the workmanship was less than satisfactory, based on the evidence before us, we do not conclude that it was so poor as to be unconscionable. See Keeton v. Hinkle (Mar. 10, 2000), 5th Dist. No. CA 871, 2000 WL 329809, at 5 (where the court also stated that "while the workmanship in this case was less than satisfactory, we do not find that it was so poor as to be unconscionable.") Hence, the trial court did not err in declining to find a violation of the CSPA based on poor workmanship. The lower court reached its factual findings and conclusions by assessing the testimony of the witnesses at the trial and their exhibits. Furthermore, appellants did not demonstrate that there was a specific act or practice that was deceptive, which violated R.C. 1345.02 or R.C. 1345.03. Since there was competent, credible evidence supporting the trial court's decision, such decision was not against the manifest weight of the evidence. Appellants' first assignment of error lacks merit.
 {¶ 20} For their second assignment of error, appellants allege that the trial court erred by not awarding the proper statutory damages. Appellants claim that treble damages in the amount of $33,330 should have been awarded. However, we note that such an award is well beyond the monetary jurisdiction of a municipal court.
 {¶ 21} If an Ohio consumer has been the victim of a deceptive sales practice, R.C. 1345.09 outlines certain remedies which the consumer may pursue. A consumer may recover damages under the provisions of R.C.1345.09(B) based on actual damages awarded for a breach of contract claim only if the supplier's actions constituted both a breach of contract and a deceptive or unconscionable practice under the CSPA.
 {¶ 22} Here, since there was no CSPA violation, R.C. 1345.09(B) does not apply. The trial court did not err in the amount of damages it awarded appellants. Appellants' second assignment of error is not well-founded.
 {¶ 23} In the third assignment of error, appellants contend that the trial court erred by not finding appellee personally liable for committing unfair and deceptive sales practices. Appellants argue that appellee should be personally liable because he noted on the contracts that they had been paid in full, he participated in the repairs along with a crew, and he attempted to remedy the defects.
 {¶ 24} A corporate officer may be held individually liable for acts that violate the CSPA. Grayson v. Cadillac Builders, Inc. (Sept. 14, 1995), 8th Dist. No. 68551, 1995 WL 546916, at 3. See, also, Stultzv. Artistic Pools, Inc. (Oct. 10, 2001), 9th Dist. No. 20189, 2001 WL 1219473, at 4. In order to hold a corporate officer personally liable for his actions in violation of the CSPA, the evidence must show that the officer participated in the commission of an act or specifically directed the particular act to be done. Grayson, supra, at 3. In Grayson, the appellate court clarified that:
 {¶ 25} "The [CSPA] does not change the existing common law of tort, nor does it change the common law rule with respect to piercing the corporate veil. A corporate officer may not be held liable merely by virtue of his status as a corporate officer. It does, however, create a tort which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities." Id. at fn. 1.
 {¶ 26} Based on the foregoing, this court concludes that the trial court did not err as there was no violation upon which it could have found appellee to be personally liable. Therefore, appellee did not commit any fraudulent acts that would trigger piercing the corporate veil, which would result in personal liability. Appellant's third assignment of error is without merit.
 {¶ 27} For the foregoing reasons, appellants' assignments of error are not well-taken. The judgment of the Willoughby Municipal Court is affirmed.
JUDITH A. CHRISTLEY, J., concurs, DIANE V. GRENDELL, J., concurs in judgment only.
[1] The record reveals that appellee's proper name is John Slapnicker, and he is the owner and president of Mason Masters, Inc., which is an Ohio corporation.
[2] The second motion for continuance was filed because the trial was scheduled for July 13, 2001, and appellant LaVerne Yates passed away on July 8, 2001.
[3] We note that appellants filed the transcripts from the hearings with the trial court on February 6, 2002, which was after the court had ruled on appellants' objections to the magistrate's decision.
[4] According to the testimony of appellant William S. Yates, the payments were made with three checks, all of which were payable to Mason Masters, Inc.